FIRST DEPARTMENT, JUNE, 1986

(June 3, 1986)

■ PHILIP HAUPTMAN, Appellant, v GRAND MANOR HEALTH RELATED FACILITY, INC., Respondent.—Order, Supreme Court, New York County (George Bundy Smith, J.), entered June 29, 1984, which, *inter alia,* denied plaintiff's motion for a preliminary injunction and granted defendant's cross motion to dismiss the complaint to the extent of dismissing the third, fourth and fifth causes of action, unanimously affirmed, without costs.

Order, Supreme Court, New York County (Burton S. Sherman, J.), entered May 8, 1985, which denied plaintiff's motion for summary judgment on the first and second causes of action and granted defendant's cross motion for summary judgment dismissing the complaint, modified, on the law, to reverse the grant of summary judgment to the defendant and to reinstate plaintiff's first and second causes of action for an injunction, and otherwise affirmed, without costs.

Plaintiff Philip Hauptman is a duly licensed psychiatrist who, since October 1980, had been associated with defendant nursing home, Grand Manor Health Related Facility, Inc., as a staff psychiatrist. At the request of Bert Liebman, the owner and administrator of the facility, Hauptman treated individual patients at the facility and also made himself available 24 hours a day, seven days a week, for emergency psychiatric care for any and all patients there.

Plaintiff alleges that sometime thereafter Dr. John Albanese, the medical director of Grand Manor, advised him that if he wished to retain his privileges within the facility and treat patients therein, plaintiff would be compelled to sign an agreement with a professional corporation, Pelham Professional Medical Services, P. C., a corporation having overlap-

151

ping ownership with Grand Manor, which had been given the exclusive right to provide medical services to residents of Grand Manor. The professional corporation would pay plaintiff 80% of the amount of the fees collected on his behalf, and would retain the remaining 20%. Plaintiff would also receive one share of stock in the professional corporation, which share would not be distributed.

Characterizing this arrangement as improper fee splitting, an "illegal and unethical kickback arrangement", and a "shakedown" scheme, plaintiff refused to enter into this agreement. Consequently, plaintiff was informed by Liebman and Albanese, on March 29, 1982, that he would be prevented from treating patients in the facility in the future. Plaintiff alleges that when he next attempted to enter the facility he was physically restrained, that since then he has been refused privileges at the nursing home, and has had no access at all to his patients because his telephone calls to them are not put through the nursing home's switchboard, and his letters to them are returned, delivery being refused by the defendant. Plaintiff's moving papers include the letters of at least one nursing home patient who wishes to be treated by Dr. Hauptman and the copies of the doctor's letters to other patients that were refused delivery by the defendant.

Dr. Hauptman initially brought an action against Grand Manor, Albanese, and Pelham Professional Medical Services, P. C., in Supreme Court, Bronx County, seeking, *inter alia,* injunctive relief to compel the defendants to grant plaintiff access to his patients. That action was dismissed for failure to exhaust administrative remedies.

Next, plaintiff filed a complaint with the appropriate administrative body, the New York State Public Health Council, pursuant to Public Health Law article 28. On June 17, 1983, the Council issued a finding of "no cause to credit the complaint", holding that the exclusion of Dr. Hauptman was "related to the objectives of the institution".

Plaintiff then brought the instant action against Grand Manor asserting five causes of action—two for injunctive relief to prevent defendant from denying him access to the facility, and three seeking money damages under various inartfully pleaded theories of liability.

When plaintiff moved for a preliminary injunction, defendant cross-moved to dismiss the complaint pursuant to CPLR 3211. In the first order appealed from, Justice George Bundy Smith denied the request for a preliminary injunction on the

ground that plaintiff had shown neither a clear right to the relief nor irreparable harm. Defendant's cross motion was granted to the extent of directing dismissal of the causes of action for money damages because Public Health Law § 2801-b affords only injunctive relief (§ 2801-c) and does not provide a basis for recovery of money damages. Significantly, the first two causes of action, for injunctive relief, were left standing.

Subsequently, plaintiff moved for summary judgment on these causes of action and defendant cross-moved for summary judgment dismissing these causes. In the second order appealed from, Justice Burton Sherman granted the cross motion for dismissal. That court specifically held that the contract with Pelham Professional Medical Services, P. C. was for "a reasonable institutional objective" and thereby did not violate Public Health Law § 2801-b. The court further held that the fee-splitting arrangement was not illegal and that the finding of "no cause to credit the complaint" by the Public Health Council, while admittedly not conclusive, should be granted great weight. Finally, the court stated that there was no showing that the patients at Grand Manor were placed there by plaintiff or that the patients whom he allegedly was prevented from seeing actually demanded plaintiff's services.

Since we believe that triable issues of fact were raised with respect to all of these issues, we hold that plaintiff's remaining causes of action for injunctive relief withstand defendant's motion for summary judgment and we reverse that aspect of the second order appealed from.

Public Health Law § 2801-b (1) prohibits a hospital* from excluding or expelling a physician without stating reasons therefor or if the reasons stated are "unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant." *(See also, Matter of Fritz v Huntington Hosp.,* 39 NY2d 339.) Defendant has not conclusively demonstrated that the exclusion of the plaintiff because of his refusal to join the professional corporation is a reasonable institutional objective. The allegations by plaintiff that the overlapping ownership of the nursing home and the professional medical corporation and the 20% fee-splitting arrangement constitute an offensive "kickback" and "shakedown" scheme directed to nefarious business objectives of the nursing home rather than to patient welfare or a reasonable institutional objective certainly raise triable issues

---

* A nursing home facility such as defendant is included in this statute's definition of "hospital". (Public Health Law § 2801 [1].)

of fact as to the reasons he was excluded and whether they comport with the statutory dictates and public policy embodied in the Public Health Law. These detailed allegations of fraud and bad faith as the foundation of plaintiff's exclusion from the nursing home are not overcome by the perfunctory and conclusory submissions of the defendant as to the reasonableness of its objective, and plaintiff's showing is clearly sufficient to raise issues of fact which preclude summary judgment. *(Cf. Guibor v Manhattan Eye, Ear & Throat Hosp., 56 AD2d 359.)*

There is also a serious question as to whether the fee-splitting arrangement involved in the professional corporation's proposed contract is legal. While defendant correctly points out that Education Law § 6509-a does not prohibit members of a professional corporation from pooling professional fees and sharing the moneys thus received by the corporation, that type of situation is far different from the coercive and overreaching arrangement alleged to be here at issue. The statute permits fee splitting among fellow physicians who voluntarily enter into a professional corporation. Plaintiff in the instant case is not a member of the professional corporation but is an independent doctor who alleges that he would be forcibly conscripted into the corporation at the price of surrendering 20% of his fees against his will. This does not constitute the *sharing* of fees among fellow members of a group which is contemplated by Education Law § 6509-a.

Defendant contends that that 20% fee retention is necessary to compensate for billing and office and administrative costs. State regulations, however, expressly forbid a professional corporation from charging its members a fee for such services based upon a percentage of, or dependent upon, income received from practice. (8 NYCRR 29.1 [b] [4]; *see, United Calendar Mfg. Corp. v Huang*, 94 AD2d 176.) Moreover, the substantial figure of 20% is indicative of an illegal and unethical fee-splitting arrangement. *(Cf. United Calendar Mfg. Corp. v Huang, supra,* wherein the court criticized a similar arrangement based upon 30%.)

The fact that the Public Health Council found "no cause to credit the complaint" is neither persuasive nor controlling. Public Health Law article 28 creates a two-step statutory scheme whereby an aggrieved physician must first submit his or her complaint to the Public Health Council and may thereafter apply to the courts for injunctive relief pursuant to section 2801-c. "In the injunction action, the court undertakes a *de novo* review of the issues involved in the dispute. (See

*Matter of Fritz v Huntington Hosp.,* 39 NY2d 339, *supra.)* The court is not bound by the prior determination of the council and is not limited to a consideration of the information previously submitted to that body. While the resulting determination of the council is admissible in the injunction action, it is admissible only to the extent that it serves as prima facie evidence of any fact or facts found therein. (Public Health Law, § 2801-c.)" *(Matter of Cohoes Mem. Hosp. v Department of Health,* 48 NY2d 583, 588-589.) Here, the Council made no findings of fact but only issued a letter stating that there was no cause for the complaint. In this context, the determination of the Council carries little, if any, weight in the instant action.

The court below also erred in finding that there was no showing that any patients at the facility were plaintiff's patients or that there were patients who desired his services. Plaintiff submitted two letters from at least one resident of the nursing home who sought his services and also demonstrated that defendant has denied him access to or communication with the residents, by refusing to deliver mail or forward telephone calls. With communication thus impaired, plaintiff is severely hampered in demonstrating, at this stage of the proceedings, which other patients also desire his services. Here again, an issue of fact exists requiring the denial of summary judgment.

Patients of a medical facility have the right to seek the services of a doctor of their own choice and they are not obligated to use only doctors affiliated with, or designated by, the medical facility. *(United Calendar Mfg. Corp. v Huang, supra.)* By excluding the plaintiff from its premises, the defendant has deprived its patients of this free right of choice. Public Health Law § 2801-b prohibits a facility from excluding a doctor or terminating his privileges absent reasons that are related to the reasonable objectives of the institution. Plaintiff's allegations as to unethical fee splitting and other untoward aspects of the arrangement here in issue, if established at trial, would constitute a violation of that section and warrant the injunctive relief sought.

Accordingly, the grant of summary judgment dismissing the first and second causes of action for injunctive relief is reversed and those causes of action are reinstated.

We have examined the other points raised on this appeal and find them without merit. Concur—Murphy, P. J., Ross and Ellerin, JJ.

Kupferman and Asch, JJ., concur in a memorandum by Asch, J., as follows: Special Term found that plaintiff did not show that any patient at the facility was placed there by him or that any patient demanded his services. However, as the majority notes, plaintiff's moving papers include at least one letter from a patient desiring treatment by plaintiff. Consequently, there is an issue of fact which mandates denial of defendant's cross motion for summary judgment.

However, I disagree with the analysis and characterization of the retention of 20% of fees received by the professional corporation for administrative and overhead costs as "indicative of an illegal and unethical fee-splitting arrangement". Pelham Professional Medical Services, P. C., not a party to this action, is a professional service corporation owned and controlled by physicians at defendant's premises. While fee-splitting arrangements by physicians are prohibited by Education Law § 6509-a, there has been no showing by plaintiff here that any fees were shared or to be shared by members of this professional group with nonmembers or with defendant. Section 6509-a does not prohibit "persons from practicing as partners, in groups or as a professional corporation nor from pooling fees and moneys received, either by the partnerships, professional corporations or groups by the individual members thereof, for professional services * * * nor shall the professionals constituting the * * * groups be prohibited from sharing, dividing or apportioning the fees and moneys received by them or by the * * * group in accordance with a partnership or other agreement".

*United Calendar Mfg. Corp v Huang* (94 AD2d 176), cited by the majority, does not support the position that the 20% fee retention by the professional corporation herein is illegal or unethical. In that case, the Second Department noted that the corporation seeking to uphold such an arrangement was *not* a medical professional corporation and was operating a medical facility for which it had no license. That corporation simply maintained the building and hired medical professionals to staff it under a true "fee-splitting" arrangement. The situation before us is completely different. Here, there is no sharing of fees with anyone other than physician-members of the professional corporation.

Business Corporation Law § 1503 (b) requires that *all* of Pelham's shareholders must be authorized by law to render the professional service for which the corporation is organized. The physicians herein who comprise the officers, directors and shareholders of the corporation pursuant to the statute have

provided for retention of 20% of the fees collected for over-head, etc. Any surplus remaining from this retained amount would, of course, be the property of the stockholders. If any physician-shareholder feels that this amount is too substantial, he or she can attempt to persuade the other stockholders to reduce it. The shareholder can also bring a derivative action for corporate waste against the officers and directors.