■ Roberto Lipsztein, Respondent, v Mount Sinai Hospital, Appellant.—Order, Supreme Court, New York County (Burton S. Sherman, J.), entered July 3, 1990, which, *inter alia,* granted plaintiff's motion for a temporary injunction while denying defendant's cross-motion to compel disclosure, affirmed to the extent appealed from, without costs.

Plaintiff is a board-certified radiotherapist who joined defendant's staff in July 1982, in voluntary status, which accorded him privileges to treat his own patients at defendant's facilities. In November 1983, after active recruitment by defendant, plaintiff changed his status to full-time attending physician at Mount Sinai. By 1987, plaintiff had built a private practice, and sought to return to voluntary attending status. But in May 1982, as a result of recommendations contained in its Ad Hoc Committee Report on Clinical Practice (the "Hyman Report"), defendant had adopted a new policy which sought to curb such return of its full-time staff to voluntary status by requiring such physicians first to resign their affiliation with the hospital and then apply for voluntary attachment *de novo.* Unwilling to risk severing his affiliation with defendant altogether, plaintiff filed a complaint with the Public Health Council, under Public Health Law § 2801-b, alleging an "improper practice" on defendant's part with respect to his professional privileges. Armed with a favorable ruling from the Council, plaintiff obtained a temporary injunction against defendant restoring plaintiff's voluntary staff privileges (Public Health Law § 2801-c), and defendant appeals.

Defendant cites its institutional objectives in seeking to secure better and more efficient health care while promoting better fiscal responsibility. But in balancing the equities, these worthy objectives are overshadowed by the right to continued access to plaintiff's services by his patients and future referrals at Mount Sinai, especially in light of the serious question of fact as to whether plaintiff was properly apprised of this new policy at the time he joined defendant's staff, a procedure the Hyman Report had specifically recommended.

The fact that plaintiff's income may have increased over the past several years as a result of his expanded private practice (the subject of defendants motion for cross relief) is irrelevant to the request for temporary injunctive relief. Concur—Ross, J. P., Carro and Wallach, JJ.

Smith, J., dissents in a memorandum as follows: I believe that all of the grounds for granting a preliminary injunction have not been satisfied and that the defendant is entitled to discover the extent of plaintiff's knowledge of the new policy. I therefore dissent.

Plaintiff herein is a licensed New York State physician, board-certified in radiotherapy. The complaint seeks a temporary and permanent injunction, pursuant to Public Health Law §§ 2801-b and 2801-c, to compel defendant Mount Sinai Hospital to recognize his voluntary privileges in the hospital's Department of Radiotherapy and to bar the defendant from interfering with his right to practice as a voluntary staff member in this department. Compensatory and punitive damages for the alleged loss of professional income, as a result of the defendant's alleged improper practices, are also being sought. From July 1976 to June 1981, plaintiff participated in residency and fellowship programs in the Mount Sinai Department of Radiotherapy. In July 1982, plaintiff was granted privileges as a voluntary staff member at Mount Sinai. In November 1983, he began employment at the hospital as a full-time staff member. In August 1987, plaintiff decided to return to his prior status as a voluntary staff member. He learned that the long-standing policy of permitting physicians to convert automatically from full-time to voluntary status had been changed as of May 1982. Plaintiff was now required to submit his resignation from the full-time position and then apply for voluntary status anew.

This change in policy was set forth in a report from the hospital's Ad Hoc Committee entitled "Interim Report No. 3 to the Board of Trustees," commonly referred to as the Hy-

man Report. The Hyman Report addressed, *inter alia,* the issue of physicians automatically converting from full-time to voluntary status and its impact on staffing levels and patient care. This practice was to cease and the hospital was required to obtain written acknowledgment of this new policy from the physician prior to his or her appointment as a full-time staff member. Although this report became hospital policy, it was never included in the hospital by-laws.

This controversy arises because plaintiff denies ever receiving oral or written notification of this new policy. He unsuccessfully exhausted his administrative remedies within the hospital. On August 8, 1988, plaintiff voluntarily left his full-time staff position at Mount Sinai and he currently remains unaffiliated with the hospital. Subsequently, plaintiff filed a complaint with the Public Health Council (PHC).

The PHC found cause to credit the complaint and so notified the defendant of its improper practice in failing to recognize the plaintiff's voluntary privileges by letter dated January 28, 1990. However, the defendant maintained its position. By way of an Order To Show Cause, plaintiff sought a temporary injunction in the Supreme Court to recognize his voluntary privileges in the Mount Sinai Hospital Department of Radiotherapy. By order and decision entered July 3, 1990, the IAS court granted the preliminary injunction and denied the defendant's motion to compel disclosure. This appeal followed.

Plaintiff sought and obtained from the IAS court an injunction requiring the defendant, *pendente lite,* to grant the plaintiff voluntary privileges in its Department of Radiotherapy. This is exactly the relief being ultimately sought by the plaintiff in this litigation. " 'Ordinarily, injunctive relief will not issue where its effect will be to grant all the relief to which the party may be entitled after a trial' ". *(Societe Anonyme Belge D'Exploitation De La Navigation Aerienne v Feller,* 112 AD2d 837, 839-840 [1st Dept 1985], quoting *Chrysler Corp. v Fedders Corp.,* 63 AD2d 567, 568-569 [1st Dept 1978].) It is well established that an injunction *pendente lite* requires a showing that there is (1) a likelihood of success on the merits; (2) irreparable injury in the absence of granting a preliminary injunction; and (3) a balancing of equities. *(Grant Co. v Srogi,* 52 NY2d 496, 517 [1981].) In addition, "where injunctive relief is granted, it is to be molded to fit the circumstances so as to preserve the *status quo* to the extent possible." *(Societe Anonyme Belge D'Exploitation De La Navigation Aerienne v Feller, supra,* at 840.) On this record, the plaintiff has not shown that, absent a preliminary injunction,

he will suffer irreparable harm and that this injunction preserves the *status quo*.

First, irreparable injury has been defined as "a continuing harm resulting in substantial prejudice caused by the acts sought to be restrained if permitted to continue *pendente lite*". (*Societe Anonyme Belge D'Exploitation De La Navigation Aerienne v Feller, supra*, at 840; *see, Allied-Crossroads Nuclear Corp. v Atcor, Inc.*, 25 AD2d 643 [1st Dept 1966].) The IAS court concluded that, based upon Public Health Law § 2801-b, hospital affiliation was a valuable right and its denial, in and of itself, constituted irreparable harm. Section 2801-b provides the framework for overseeing the non-discriminatory appointment of hospital staff and extension of professional privileges. It sets forth the criteria for determining whether the refusal to appoint or grant privileges has been unlawful. Section 2801-c of the Public Health Law provides, *inter alia*, that "[t]he supreme court may enjoin violations or threatened violations" of section 2801-b. Hence, just as section 2801-b does not provide that the refusal to appoint or grant professional privileges is a *per se* violation of law, section 2801-c does not require the court to grant injunctive relief in every instance of such a refusal or denial. Indeed, in *Hauptman v Grand Manor Health Related Facility* (121 AD2d 151 [1st Dept 1986]), the denial of a preliminary injunction was affirmed by this court on facts presenting a more egregious situation than the case at bar. In *Hauptman*, the IAS court denied the preliminary injunction because the plaintiff-physician had shown neither a clear right to relief nor irreparable harm. Plaintiff had been denied access to his patients, who were confined in the defendant-nursing home. In the case at bar, no patients were identified as having requested the plaintiff's services and being denied them. Plaintiff testified that he maintained an office and had privileges at other hospitals. Moreover, plaintiff further testified that his income had greatly increased since his departure from Mount Sinai. Therefore, there is no basis for concluding that the denial of professional privileges, in and of itself, or otherwise in this case, was a cause for irreparable harm.

Second, the IAS court made no findings specific to the *status quo*. The preliminary injunction in this action does not preserve the *status quo*. Since August 8, 1988, when the plaintiff voluntarily left his full-time staff position, he has had no affiliation with Mount Sinai. Consequently, the preliminary injunction dramatically altered the *status quo*.

Finally, I would permit discovery on the issue of whether

the plaintiff had any knowledge of the policy prohibiting automatic conversion from a full-time staff position to voluntary status. Since the plaintiff is seeking, *inter alia,* equitable relief, if the defendant could offer proof of laches or unclean hands, no preliminary injunction would be granted. (Siegel, NY Prac § 328, at 399.) Precluding discovery in this area suggests a strict liability standard for a hospital which fails to adhere to its policy and procedures. In this case disclosure should be compelled.