OPINION OF THE COURT
Herman Cajhn, J.
Plaintiff Dr. Moneer K. Hanna (Dr. Hanna) moves by order to show cause for an order granting him a preliminary injunction, directing defendant Board of Trustees of New York University Hospital (NYUH): (1) to reinstate him as Chief of Pediatric Urology at NYUH; (2) to restore his operating room block time one day per week, and to dedicate that time solely to Dr. Hanna; and (3) to reinstate his access to NYUH’s referral service and to restore the practice of presenting his name in NYUH’s referral service.
Although the complaint does not make this completely clear, plaintiffs attorney’s affidavit and memorandum of law indicate that the action is brought pursuant to Public Health Law §§ 2801-b and 2801-c, which provide, in relevant part: section 2801-b (1): "It shall be an improper practice for the governing body of a hospital to * * * curtail, terminate or diminish in any way a physician’s * * * professional privileges in a hospital, without stating the reasons therefor.” Section 2801-c: "The supreme court may enjoin violations * * * of any provisions of this article * * * In any action for injunction brought pursuant to this article, any finding of the public health council * * * shall be prima facie evidence of the fact or facts found therein.”
Dr. Hanna is a physician licensed to practice medicine in New York and several other States. In 1984, he was appointed Chief of the Division of Pediatric Urology at NYUH by Dr. Pedro Morales, the then Chairman of the Department of Urology. Dr. Hanna served in this capacity until January 1994. Dr. Hanna alleges that as part of his arrangement with Dr. Morales, "one day per week the operating room would be dedicated to the plaintiff solely for his pediatric urology cases” and that "for the past 10 years, the plaintiff had regularly scheduled blocked-time in the operating room of NYU each Monday, dedicated strictly to perform his pediatric urological surgeries.”
In December 1993, Dr. Herbert Lepor replaced Dr. Morales as Chairman of the Department of Urology. The following *792 month, Dr. Lepor replaced Dr. Hanna with Dr. Ellen Shapiro, Dr. Lepor’s wife, as Program Director of Pediatric Urology. No reason was given to Dr. Hanna for his removal as Chief of Pediatric Urology. By letter to Dr. Lepor, dated January 8, 1994, Dr. Hanna protested, "In my opinion [Dr. Shapiro’s appointment] is Nepotism in its worst form.”
In March 1994, a notice was posted on the book used to schedule surgery, informing the Department that Dr. Lepor, and only Dr. Lepor, would have block time in the operating room assigned to him. Dr. Hanna alleges that this withdrawal of his regularly scheduled block time in the operating room was in retaliation for his accusation of nepotism against Dr. Lepor. Again, no reason was given for the termination of this privilege.
In December 1994, Dr. Hanna complained of defendant’s actions to the Public Health Council (PHC), pursuant to the provision of Public Health Law § 2801-b (2). His complaint in that forum was substantially the same as his complaint herein, with the exception that the PHC complaint contained nothing concerning NYUH’s referral service. By letter dated January 4, 1995, the PHC responded:
"If [sic] brief, your complaint was based upon the hospital’s termination of your incumbency [sic] as chief of the section of pediatric urology, and the subsequent adverse effect the change in your status had on your ability to reserve time in the operating room.
"The Public Health Council has reviewed similar problems in the past. It has determined that the meaning of professional privileges pursuant to Section 2801-b of the Public Health Law does not include rights that derive from positions as administrative heads of clinical departments or sections.- Appointment to and termination from such positions are considered matters within the administrative powers of the hospital, and they are not covered by Section 2801-b. Court rulings have confirmed this view.”
Dr. Hanna thereupon commenced this action.
NYUH asserts that its actions were within the proper exercise of authority and discretion by the Department Chairman; that Dr. Hanna’s attending and admitting privileges at the hospital and his part-time faculty position in the School of Medicine — the same privileges and position that other physicians in nonadministrative positions at NYUH enjoy — remain unchanged and undiminished; and that "no factual or legal allegation in the complaint” permits judicial intervention in this *793 matter. For these reasons, without so moving, NYUH asks the court to dismiss this action for failure to state a cause of action. "[A]t common law a private hospital’s actions were immunized from judicial scrutiny inasmuch as physicians served at the pleasure of the hospital. A hospital could terminate a physician’s professional privileges for any reason, even an arbitrary one, or for no reason at all.” (Matter of Cohoes Mem. Hosp. v Department of Health, 48 NY2d 583, 587 [citations omitted].) "The Legislature’s enactment of Public Health Law § 2801-b, which provides the mechanism for appealing from an improper denial, termination or diminishment of a physician’s professional privileges, was intended to temper the harsh common-law rule whereby, 'absent a contractual obligation to the contrary, a physician’s continued professional association with a private hospital was within the unfettered discretion of the hospital’s administrators. Denial of staff privileges, for whatever reason or for no reason at all, constituted no legal wrong’ (Guibor v Manhattan Eye, Ear & Throat Hosp., 46 NY2d 736, 737).” (Del Castillo v Bayley Seton Hosp., 172 AD2d 796, 797.) The "mechanism for appealing from an improper denial, termination or diminishment of a physician’s professional privileges” (supra) was summarized by the Court of Appeals in Matter of Cohoes Mem. Hosp. v Department of Health (supra, 48 NY2d, at 588-589):
"The statutory procedure created by the Legislature through which a physician may challenge a termination or diminution of hospital privileges is a two-step process. The first step is a review of the physician’s claim by the Public Health Council, an administrative body with professional expertise in the health-care field. It is the duty of the council to undertake a prompt investigation of the action complained of and to allow the parties to the dispute to submit, in a strictly confidential setting, any relevant information in support of their respective positions. Should the council find that there is cause to credit the physician’s complaint, its power to grant remedial relief is limited to directing an offending hospital to reconsider its earlier actions. On the other hand, if no improper practice is found, the council simply informs the parties of that fact. In either case, we believe that the Legislature intended the task of the council to be at an end at this point for it has given the council no further statutory purpose or power.
"If the parties, with the assistance of the Public Health Council, are unable to resolve their differences amicably, then, and only then, may the aggrieved physician, if he be so ad *794 vised, invoke step two of the statutory procedure by commencing an action pursuant to section 2801-c of the Public Health Law to enjoin the hospital from discriminating against or unjustly denying professional privileges or staff membership in violation of section 2801-b of the Public Health Law. (See Guibor v Manhattan Eye, Ear & Throat Hosp., 46 NY2d 736, supra).
"In the injunction action, the court undertakes a de novo review of the issues involved in the dispute. (See Matter of Fritz v Huntington Hosp., 39 NY2d 339, supra). The court is not bound by the prior determination of the council and is not limited to a consideration of the information previously submitted to that body. While the resulting determination of the council is admissible in the injunction action, it is admissible only to the extent that it serves as prima facie evidence of any fact or facts found therein. (Public Health Law, § 2801-c.)”
In the event that the PHC makes no findings of fact, but only issues a letter stating that there was no cause for the complaint, "the determination of the Council carries little, if any, weight” in the action for an injunction. (Hauptman v Grand Manor Health Related Facility, 121 AD2d 151, 155.)
In its argument for dismissal, defendant stresses that NYUH is an educational institution, and that "since the academic and administrative decisions of educational institutions involve the exercise of subjective professional judgment, public policy compels a restraint which removes such determinations from judicial scrutiny.” (Gertler v Goodgold, 107 AD2d 481, 485, affd 66 NY2d 946 [citations omitted].) The Gertler Court found that this public policy applied "in matters wholly internal” because "these institutions are peculiarly capable of making the decisions which are appropriate and necessary to their continued existence.” (Supra [citations omitted].) The Gertler Court cautioned that "courts have been meticulous not to 'invade, and only rarely [to] assume academic oversight, except with the greatest caution and restraint, in such sensitive areas as faculty appointment, promotion, and tenure, especially in institutions of higher learning’ [citations omitted].” (Supra, at 486.)
However, Gertler (supra) does not hold that educational institutions’ academic and administrative decisions are exempt from judicial scrutiny. Rather, the Gertler Court found that "the judgment of professional educators is subject to judicial scrutiny to the extent that appropriate inquiry may be made to determine whether they abided by their own rules, and whether they have acted in good faith or their action was arbitrary or irrational.” (Supra [citations omitted].)
*795 The plaintiff in Gertler (supra) was a practicing physician and tenured faculty member in the Department of Rehabilitation Medicine of New York University School of Medicine who brought an action to enjoin the relocation of his office within the Medical Center’s Institute of Rehabilitation Medicine, and to recover compensatory and punitive damages. Thus, Gertler does not involve Public Health Law §§ 2801-b and 2801-c (even though Dr. Gertler claimed that the School of Medicine " 'sought, without justification, to undermine [his] career and deprive him of the basic benefits and privileges of his academic tenure’ ” [supra, at 482-483], the cases cited by the Gertler Court pertain to nonmedical educational institutions, and do not discuss the impact or ramifications of Public Health Law §§ 2801-b and 2801-c upon their decisions).
In considering whether this court should rule upon NYUH’s decisions that affected Dr. Hanna, the court notes that the PHC determined that Public Health Law § 2801-b "does not cover” appointment to and termination from a position as administrative head of a clinical department or section. However, the PHC "functions in an advisory capacity only and * * * its determination does not bind the court [citations omitted].” (Harris v Eisenberg, 199 AD2d 305, 307.) In support of its determination, the PHC stated that "Court rulings have confirmed this view”, but it cited no case law. This court has found no other authority for the proposition that a physician’s appointment to or termination from an administrative position is not "covered” by Public Health Law § 2801-b.
Of the Public Health Law § 2801-c cases involving the loss of a physician’s administrative title reviewed by this court, only Del Castillo (supra) made any clear determination with respect to that particular loss, and that Court found that "Dr. Del Castillo’s appointment as Director of the Anesthesiology Department was expressly made contingent upon the continued existence of the agreement entered into between the defendant and the plaintiff professional corporation. Termination of Dr. Del Castillo’s privileges was pursuant to the terms of the agreement. Thus, he was not entitled to injunctive relief pursuant to Public Health Law § 2801-c.” (Del Castillo v Bayley Seton Hosp., 172 AD2d, supra, at 797; see also, Matter of Cohoes Mem. Hosp. v Department of Health, 48 NY2d 583, supra [the action which the PHC found an improper diminution of privileges was the reduction in the doctors’ staff rank from " 'active’ ” to " 'courtesy’ ” — not their removal from administrative positions; the court’s holding was that a PHC’s determination is not subject *796 to review pursuant to CPLR article 78]; Wollman v Long Is. Jewish Med. Ctr., 170 AD2d 673, 675 [the " 'Acting Chairman’ ” of the Department of Anesthesiology was summarily suspended from his position and his professional privileges were revoked; a reason was given; the court stated that "(t)he extent of judicial review of the defendant’s actions in the instant action involves a determination of whether the purported grounds for the revocation of Dr. Wollman’s professional privileges were reasonably related to the defendant’s concerns and whether the defendant acted in bad faith” (citations omitted)].)
Thus, it appears that the question of whether a physician’s loss of an administrative position in a hospital falls within the scope of Public Health Law § 2801-b has not yet been squarely addressed by the courts of this State.
While it may be true that NYUH is an educational institution of higher learning, it is also a hospital. While courts exercise "the greatest caution and restraint” in reviewing an educational institution’s academic and administrative decisions, it is not true, and in light of Public Health Law §§ 2801-band 2801-c, this court does not hold, that when the academic or administrative decision of a hospital which is also part of a university, or is a teaching hospital affects a physician’s professional privileges, " 'questions of judgment, discretion, allocation of resources and priorities [are] inappropriate for resolution in the judicial arena’ ” (James v Board of Educ., 42 NY2d 357, 368 [citation omitted].) The statute was enacted to "temper” the common-law rule that "a private hospital’s actions were immunized from judicial scrutiny” (Matter of Cohoes Mem. Hosp. v Department of Health, supra, at 587, 588), and case law since that time has established the scope of that scrutiny.
Accordingly, the court holds that NYUH’s removal of Dr. Hanna from his position as Chief of the Division of Pediatric Urology, and the termination of his privilege of block time in the operating room, is subject to judicial review pursuant to Public Health Law §§ 2801-b and 2801-c.
NYUH was required by the statute to give a reason for replacing Dr. Hanna as Chief of the Pediatric Urology Division and for eliminating his block time in the operating room. It should have done so for two reasons: Public Health Law § 2801-brequires it, and, absent a reason, neither court nor the PHC had any basis upon which to determine whether NYUH’s actions were in accordance with its own rules, were in good faith, or arbitrary, or irrational. (Gertler v Goodgold, 107 AD2d, supra, at 486.)
*797 In this motion, Dr. Hanna seeks a mandatory preliminary injunction, which, because this is an action brought pursuant to Public Health Law § 2801-c, seeks the same relief as the action itself. In the exercise of its discretion, the court grants NYUH the opportunity to inform plaintiff and this court of the reason for its removal of Dr. Hanna from his position as Chief of the Division of Pediatric Urology, and for the termination of his privilege of block time in the operating room, within 30 days of receipt of a copy of this decision with notice of entry. At the end of said period, plaintiff may renew the motion for injunctive relief.
With respect to Dr. Hanna’s request for injunctive relief relating to NYUH’s referral service, the court notes that Dr. Hanna has not alleged any facts in support of this request. The court has reviewed the documents submitted by NYUH, which show that Dr. Hanna is listed no less than four times in the 1994 Physician Referral Directory. Hence, that branch of the application is denied.
Accordingly, it is ordered that plaintiff’s motion for a preliminary injunction is denied at this time; and it is further ordered that NYUH’s request that the complaint be dismissed is denied; and it is further ordered that NYUH shall have the opportunity to inform plaintiff and this court of the reason for its removal of Dr. Hanna from his position as Chief of the Division of Pediatric Urology, and for the termination of his concomitant privilege of block time in the operating room, within 30 days of receipt of a copy of this decision with notice of entry; and it is further ordered that plaintiff may renew the motion for injunctive relief at the end of said 30-day period.