OPINION OF THE COURT
Jasen, J.
The issue presented on this appeal is whether a determination of the Public Health Council pursuant to section 2801-b of the Public Health Law is subject to direct judicial review.
The pertinent facts may be briefly stated. In 1971, Dr. Robert C. Yates and Dr. Edward L. Schwartz were appointed to the active professional staff of Cohoes Memorial Hospital. During the course of their association with the hospital, Dr. *587 Yates became chairman of the executive committee of the medical-dental staff and president of the staff and Dr. Schwartz became chairman of the department of medicine. However, on January 25, 1977, the board of directors of the hospital removed Drs. Yates and Schwartz from their administrative positions and reduced their staff rank from "active” to "courtesy”. The hospital gave no reason for its action.
Thereupon, the physicians filed a verified complaint with the Public Health Council alleging that the hospital had reduced their professional privileges in violation of section 2801-b of the Public Health Law. The council promptly investigated the complaint and offered the parties an opportunity to be heard. On April 22, 1977, the Public Health Council found "cause to credit the complaint” of the physicians on the ground that "the hospital acted to curtail or diminish the professional privileges of Doctors Yates and Schwartz without giving reasons related to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the physicians.” The council later noted that the diminution of privileges which was found to be improper was the reduction in the physicians’ staff rank from "active” to "courtesy”. As a result of these findings, the council directed the hospital "to review the action taken in diminishing or curtailing the professional privileges of Doctors Yates and Schwartz” and to undertake that review "in accordance with section 2801-b of the Public Health Law.”
In May, 1977, the hospital commenced the instant proceeding pursuant to CPLR article 78, seeking judicial review of the council’s decision. Supreme Court dismissed the petition holding that a determination of the Public Health Council is not a final order within the meaning of CPLR 7801. The Appellate Division affirmed, characterizing the council’s determination as "a preliminary, nonfinal step to be taken prior to seeking remedial relief by means of an injunctive action.” From this order the hospital appeals. There should be an affirmance.
We begin our analysis by noting that at common law a private hospital’s actions were immunized from judicial scrutiny inasmuch as physicians served at the pleasure of the hospital. A hospital could terminate a physician’s professional privileges for any reason, even an arbitrary one, or for no reason at all. (Leider v Beth Israel Hosp. Assn., 11 NY2d 205, 208-209; Van Campen v Olean Gen. Hosp., 210 App Div 204, 209, affid 239 NY 615; see, generally, Exclusion of or Discrimi *588 nation Against Physician or Surgeon by Hospital, Ann., 37 ALR3d 645, 659-661.) In 1972, the Legislature tempered the common-law rule by enacting section 2801-b of the Public Health Law which created an appeal mechanism for physicians who claim that they have been discriminated against or unjustly denied professional privileges or staff membership at a hospital. (Guibor v Manhattan Eye, Ear & Throat Hosp., 46 NY2d 736; Fried v Straussman, 41 NY2d 376; Matter of Fritz v Huntington Hosp., 39 NY2d 339.)
The statutory procedure created by the Legislature through which a physician may challenge a termination or diminution of hospital privileges is a two-step process. The first step is a review of the physician’s claim by the Public Health Council, an administrative body with professional expertise in the health-care field. It is the duty of the council to undertake a prompt investigation of the action complained of and to allow the parties to the dispute to submit, in a strictly confidential setting, any relevant information in support of their respective positions. Should the council find that there is cause to credit the physician’s complaint, its power to grant remedial relief is limited to directing an offending hospital to reconsider its earlier actions. On the other hand, if no improper practice is found, the council simply informs the parties of that fact. In either case, we believe that the Legislature intended the task of the council to be at an end at this point, for it has given the council no further statutory purpose or power.
If the parties, with the assistance of the Public Health Council, are unable to resolve their differences amicably, then, and only then, may the aggrieved physician, if he be so advised, invoke step two of the statutory procedure by commencing an action pursuant to section 2801-c of the Public Health Law to enjoin the hospital from discriminating against or unjustly denying professional privileges or staff membership in violation of section 2801-b of the Public Health Law. (See Guibor v Manhattan Eye, Ear & Throat Hosp., 46 NY2d 736, supra.)
In the injunction action, the court undertakes a de novo review of the issues involved in the dispute: (See Matter of Fritz v Huntington Hosp., 39 NY2d 339, supra.) The court is not bound by the prior determination of the council and is not limited to a consideration of the information previously submitted to that body. While the resulting determination of the council is admissible in the injunction action, it is admissible *589 only to the extent that it serves as prima facie evidence of any fact or facts found therein. (Public Health Law, § 2801-c.)
At the conclusion of the injunction hearing, the court renders a final judgment. Only after the two-step process is complete and the court has ruled in favor of the physician is the physician entitled to any remedial relief. It is at this point that the merits of the physician’s claim have been finally determined and, thus, are subject to appellate review.
Petitioner contends, however, that the determination of the Public Health Council ought to be subject to separate judicial review apart from the possibility of review in an injunction action. We cannot agree.
In our view, the Legislature, by enacting section 2801-b of the Public Health Law, intended to provide the physician and the hospital with a professionally competent forum in which to resolve their disputes in an effort to avoid litigation, if possible. It seems obvious that the Public Health Council was never intended to mete out a separate administrative sanction, distinct from the enforcement procedure embodied in section 2801-c. Rather, it functions in an advisory capacity only, using its professional expertise to identify and discourage groundless claims, to mediate and to conciliate disputes between health-care professionals, and to offer the court some aid in resolving such disputes, should the parties fail to come to agreement on their own.*
This conclusion is supported by the failure of the Legislature to provide the Public Health Council with any means whatever of enforcing its advisory determinations. Clearly, had the Legislature intended the council’s determination to have any punitive effect in and of itself, it could easily have given that body the power to impose a sanction directly upon a hospital or to dismiss the complaint of a physician. The Legislature’s failure to do so can only indicate its desire to vest the authority to grant remedial relief in the courts.
We also reject petitioner’s contention that the determination of the Public Health Council must be considered final *590 because it is the only administrative agency with jurisdiction over a physician’s claim of termination or diminution of hospital privileges. Although it is true that the exhaustion of administrative proceedings normally culminates in a final order, it does not follow that the creation by the Legislature of but a single administrative body with jurisdiction in a given area compels the conclusion that the determination of that agency is a final order within the meaning of CPLR 7801 (subd 1) so as to be reviewable in an article 78 proceeding. This is especially true where the Legislature intended that the agency serve in an advisory capacity only, without power to order any remedial relief. Where, as here, the agency’s determination is only a procedural predicate for further judicial proceedings at which the rights of the parties will be ultimately resolved, the administrative ruling is in the truest sense nonfinal for purposes of judicial review.
The dissenters in this court, however, urge that Public Health Council’s finding of an "improper practice” stigmatizes the hospital and note that, in a case where the physician fails to bring an injunction action, the hospital is left without any means of challenging an adverse determination of the council. We fail to see how such a situation aggrieves the hospital. There is no social stigma attached to a determination of the Public Health Council. Its deliberations are held in the strictest confidence. Indeed, the record of the proceedings before the council may not be made public and is not even admissible in any subsequent judicial proceeding. (Public Health Law, § 2801-b, subd 3.) Further, the decision of the council is rendered by letter to the governing board of the hospital. Thus, the decision is likely to become public only when and if an aggrieved physician institutes an injunction action.
If the physician does bring such an action, the hospital will be afforded a complete de novo hearing on the physician’s claim (Matter of Fritz v Huntington Hosp., 39 NY2d 339, supra), including a full review of the issues which it now urges should be separately reviewed in an article 78 proceeding. If the physician fails to institute an injunctive action, the hospital certainly has no cause to complain, for its termination or diminution of the physician’s privileges will remain undisturbed.
The dissent also urges that the council’s determination aggrieves the hospital inasmuch as it serves as prima facie evidence, in any subsequent judicial action, of any fact or facts *591 found therein. However, the procedural advantage which attaches to the council’s ruling would seem to aggrieve the hospital no more than it aggrieves a physician inasmuch as the determination is accorded such status without regard to whether it is favorable or unfavorable to the physician. In any case, the evidentiary burden upon the hospital is far from overwhelming. The hospital need only show that it had a reason to terminate or diminish the physician’s privileges, that the reason related to the legitimate concerns set forth in the Public Health Law, and that it acted in good faith. (Fried v Straussman, 41 NY2d 376, supra.) In view of the minimal showing required to support the hospital’s action and noting, as we do, that the statute involved was enacted primarily for the benefit of physicians, we see no need for a separate article 78 review of the council’s determination merely because it may be of some procedural value to a physician in a later judicial action.
For all of the above reasons, we hold that a determination of the Public Health Council was not intended by the Legislature to be subject to review pursuant to CPLR article 78. Accordingly, the order of the Appellate Division should be affirmed, with costs.

 The procedures set forth in section 2801-b of the Public Health Law are analogous to the conciliation procedures which were at one time required as a prerequisite to an action for divorce, separation or annulment. (See former Domestic Relations Law, art 11-B [repealed L 1973, ch 1034, § 2, eff July 1, 1973].) These conciliation procedures provided an informal forum for the resolution of marital disputes. No remedial relief, however, could result from the conciliation and no appeal was available from any determination of the conciliation commissioner.