ROCKLAND PHYSICIAN ASSOCIATES, P.C., Ehsanollah Benaresh, M.D., Caridad M. Dy, M.D., Moon Young Kim, M.D., Anthony C.K. Lau, M.D., Rizalina Turla, M.D., Sidney Veitch, M.D., Plaintiffs,

v.

Warren GRODIN, M.D., Individually, and as Director, Department of Anesthesiology, Nyack Hospital, Nyack Medical Associates, P.C., Warren Grodin, M.D., President, Darrell Goode, M.D., David Miller, M.D., Mitchell Cohn, M.D., and Stephen Cagliostro, M.D., Individually and as members of Nyack Medical Associates, P.C., and the Nyack Hospital, Defendants.

No. 84 Civ. 8586.

United States District Court, S.D. New York.

June 4, 1985.

Danziger & Markoff, Mount Kisco, N.Y., for plaintiffs.

McDonough Marcus Cohn & Tretter, P.C., New York City, for Nyack Medical Associates, P.C., and individual defendants.

Garfinkel, Wild & Travis, P.C., Great Neck, N.Y., for defendant Nyack Hosp.

## MEMORANDUM DECISION

GAGLIARDI, District Judge.

Plaintiffs moved for a temporary restraining order and preliminary injunction restraining defendants from honoring an exclusive contract for anesthesiology services at Nyack Hospital ("the hospital"). Plaintiffs, who have rendered anesthesiology services at the hospital on both an exclusive and, more recently, a nonexclusive basis, argued that they retain clinical privileges at the hospital and that as long as they retain such privileges they cannot be ousted by an exclusive contract. Defendants opposed the motion on a number of grounds. Plaintiffs' motion was denied by oral order at a conference on April 29, 1985. At that time, the court indicated that before the court could consider injunctive relief, plaintiffs would first need to exhaust their administrative remedy before the New York Public Health Council, thereby complying with the procedures set forth in N.Y.Pub.Health L. § 2801–b(1–4) and § 2801–c, as interpreted in *Guibor v. Manhattan Eye, Ear and Throat Hospital*, 46 N.Y.2d 736, 413 N.Y.S.2d 638, 386 N.E.2d 247 (1978). This order sets forth in greater detail the basis of the April 29 decision.

### Background

Most of the critical facts concerning this action are set forth in the order of this court dated March 19, 1985, 616 F.Supp. 945, and will not be repeated here. Following issuance of the March 19 order, plaintiffs continued to provide some anesthesiology services at the hospital. Specific referrals to individual anesthesiologists to serve on particular cases apparently were honored. In April, 1985, however, plaintiffs were informed by the hospital administration that such individual referrals to plaintiffs would no longer be honored after May 1, 1985, the date the hospital's contract with Nyack Medical Associates, P.C., ("NMA") by its own terms becomes exclusive. Individual plaintiffs' position is that they are entitled to have specific referrals honored, on the basis of renewal of their clinical privileges last year for the two year period beginning June 1, 1984 and ending May 31, 1986.[1] To rebut defendants' argument that plaintiffs' privileges have been terminated by the exclusive contract, plaintiffs argue that (1) provisions of the hospital by-laws set forth specific procedures to be followed in the event the hospital wishes to terminate an individual's privileges and that (2) the by-laws have the force of contract, so that (3) unless those procedures are followed, plaintiffs' privileges remain intact.

In earlier submissions to the court, defendants have argued that questions concerning curtailment or termination of anesthesiology privileges do not present situations of irreparable harm and, further, that such questions in any event must be presented to the Public Health Council before they can be addressed by this court. The court has considered these arguments, as well as the more recent argument that plaintiffs' privileges automatically lapse on May 1, 1985, when the contract with NMA becomes exclusive.

### Discussion

#### I. Section 2801

At common law, a grant of hospital privileges to a physician meant little. Absent contractual provisions to the contrary, privileges were revocable by the hospital at will, for any or no reason. *See Cohoes Mem. Hosp. v. Dept. of Health*, 48 N.Y.2d 583, 424 N.Y.S.2d 110, 399 N.E.2d 1132

---

1. It is not clear that renewal of privileges for two year periods is in accordance with the hospital by-laws. *See* Nyack Hospital By-laws, art. III, sec. 5(1); *see also* Nyack Hospital By-laws, art III, sec. 3(1c), (10).

(1979); *Guibor v. Manhattan Eye, Ear & Throat Hospital*, 46 N.Y.2d 736, 413 N.Y. S.2d 638, 386 N.E.2d 247 (1978), *aff'g*, 56 A.D.2d 359, 392 N.Y.S.2d 628 (App.Div. 1977) (*"Guibor"*). In passing the provisions of N.Y.Pub.Health L. § 2801, the legislature granted the holders of hospital privileges an enforceable but limited right not to have privileges terminated except "for reasons limited to patient welfare, institutional objectives, and character or competency of the physician." *See Fried v. Straussman*, 41 N.Y.2d 376, 393 N.Y.S.2d 334, 335, 361 N.E.2d 984 (1977). One limitation placed on this right is that claims that a hospital improperly has excluded or expelled a physician from membership, or curtailed, terminated or diminished "in any way" a physician's professional privileges must be presented to and determined by the Public Health Council before being brought before a court. This requirement applies to all claims, including those seeking injunctive relief. *See Guibor, supra; Cohoes Mem. Hosp. v. Dept. of Health, supra* (injunctive relief must await determination of Public Health Council; requirement of exhaustion of administrative remedies does not violate or conflict with N.Y. Pub.Health L. §§ 2801–b(4), 2801–c).

A second significant limitation stems from the standard of review. Under section 2801, courts are not to determine the "ultimate truth" of the claims which form the basis of a hospital's actions. Rather, a court is to uphold a hospital's action if it appears that the action was taken in "good faith" on the basis of the "apparent facts as reasonably perceived by the [hospital] administrators," and that the "purported grounds were reasonably related to the institutional concerns set forth in the statute...." *Fried v. Straussman, supra*, 393 N.Y.S.2d at 338, 361 N.E.2d at 988; *see Moss v. Albany Medical Center*, 61 A.D.2d 545, 403 N.Y.S.2d 568 (App.Div.1978).

## II. *Irreparable Harm*

█ Plaintiffs argue that they will be irreparably harmed if they are not permitted to practice at the hospital after May 1, 1985. In interpreting section 2801, however, New York courts have not been swayed by the sympathetic circumstances of physicians seeking injunctive relief to restore long-standing grants of clinical privileges. In *Guibor*, the New York Court of Appeals affirmed an appellate division opinion refusing to grant injunctive relief on the ground of failure to exhaust the administrative remedy. This was done even though the physician in question had held privileges from 1971 until 1976, and, as the result of the denial of reappointment, had not been permitted to practice in the hospital for more than two and a half years. *See Guibor, supra*, (issued December 6, 1978). Thus, even if a risk of irreparable harm were proven, it might not justify issuance of an injunction before recourse to the Public Health Council.

Further, on the facts of this case, plaintiffs have not met the burden of establishing irreparable harm.[2] See the order of this court dated March 19, 1985 at 7–10. *See also Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*, 684 F.2d 1346 (7th Cir. 1982) (district court abused its discretion in granting preliminary injunction against enforcement of exclusive contract for anesthesiology, even though plaintiff retained privileges and had shown that most of the local hospitals had exclusive contracts, so that he might be unable to find employment in the area).

## III. *Enforcement of the By-laws*

Plaintiffs also seem to argue that they are entitled to an injunction at this time because they have a distinct contractual right derived from the by-laws to continue to practice at the hospital. The court disagrees. Even if, as is doubtful, hospital by-laws are indistinguishable from a contract between hospital and physician, the provisions most heavily relied upon by plaintiffs do not apply to the facts in issue here. In addition, since plaintiffs seek an

---

**2.** The court can give little weight to the fact that individual referrals to particular anesthesiologists now are being made. There is no evidence that such referrals were common before issuance of the March 19 order.

order which would permit them to practice, not one which would mandate a hearing, the court cannot characterize their claim as one which need not be presented to the Public Health Council.

### A. Status of the By-laws

 A number of New York cases suggest that provisions in hospital by-laws cannot be equated with provisions in a contract between a hospital and one of its physicians. The primary case cited in this area is *Leider v. Beth Israel Hospital Ass'n.*, 11 N.Y.2d 205, 227 N.Y.S.2d 900, 182 N.E.2d 393 (1962) (*per curiam*). On the facts of the *Leider* case as set forth in the Court of Appeals opinion, it might be possible to conclude that the decision rested on a construction of the by-laws in question rather than on refusal to grant by-laws the status of contract. That inference, however, becomes less tenable upon review of the dissent and of the decision of the trial court, 33 Misc.2d 3, 229 N.Y.S.2d 134 (Sup.Ct. 1960), both of which more directly address the issue of treating by-laws as contract. Further, recent cases have cited *Leider* for the proposition that under New York law "medical staff by-laws do not give rise to actions against a hospital for alleged violations thereof." *Yates v. Cohoes Mem. Hosp.*, 64 A.D.2d 726, 406 N.Y.S.2d 893 (App.Div.), *appeal dismissed*, 45 N.Y.2d 836, 409 N.Y.S.2d 215, 381 N.E.2d 613 (1978) (court also found no violation of the by-laws in question); *Konik v. Champlain Valley Physicians Hospital Medical Ctr.*, 88 A.D.2d 678, 450 N.Y.S.2d 914 (App.Div. 1982); *see also Cohoes Mem. Hosp. v. Dept. of Health, supra; Moss v. Albany Medical Ctr. Hosp., supra* (physician denied staff privileges sought judgment directing grant of privileges based on allegations, *inter alia*, of procedural irregularities; court noted that "at common law, absent a contractual obligation to the contrary, denial of staff privileges by a private hospital constituted no legal wrong").

Plaintiffs stress two cases in their argument on this question. The first, *Northeast Georgia Radiological Assoc. v. Tidwell*, 670 F.2d 507 (5th Cir.1982), in no way determined the issue in this case. In *Northeast Georgia*, language in the contract between plaintiff (a professional corporation for radiology services) and the hospital referred to the hospital by-laws and incorporated them. *See id.*, 670 F.2d at 509, n. 6. Here, there is no such provision in the contract between Rockland Physicians Associates, P.C., and the hospital.[3] In *Northeast Georgia*, the focus was not on whether the procedural provisions of the by-laws were enforceable as contract, but rather whether, where a county hospital was involved, it was appropriate to find a "protected property interest" and state action, and thus to require that physician-contractors be afforded due process.[4] Here, there are no questions of state action or constitutional right, only those of contract and statutory right.[5]

The second case relied on by plaintiffs, *Chalasani v. Newman*, 97 A.D.2d 806, 468 N.Y.S.2d 672 (App.Div.1983), *rev'd with direction to dismiss original complaint for mootness*, 64 N.Y.2d 879, 487 N.Y.S.2d 556, 476 N.E.2d 1001 (1985), while closer to the facts here, does not clarify matters significantly. In *Chalasani*, the trial court upon motion dismissed for failure to state a cause of action a complaint which alleged that the defendant hospital had failed to follow procedures included in its by-laws when it denied plaintiff reappointment to the hospital's staff. In a brief memorandum decision, the appellate division reversed. It reinstated the complaint, finding error in the lower court's holding that "violation of Medical Staff By-Laws do[es] not give rise to an action against the hospital," and holding that "the complaint does sufficiently plead a cause of action to withstand the motion to dismiss." *Id.*, 468 N.Y. S.2d at 673.

---

**3.** There are no express contracts between individual plaintiffs and the hospital.

**4.** The breach of contract claims in *Northeast Georgia* were voluntarily dismissed; a claim under 42 U.S.C. § 1983 remained.

**5.** The term "protected property interest" cannot be equated to the term "contract right."

The *Chalasani* decision makes no mention of either the *Guibor* or the *Leider* line of cases, and concludes only that a cause of action may arise where a hospital violates its by-laws. The decision quite clearly does not hold that by-laws are enforceable as contract. The word "contract" does not appear, nor is there any mention of contractual remedies. Significantly, the analysis relies primarily on *Tedeschi v. Wagner Coll.*, 49 N.Y.2d 652, 427 N.Y.S.2d 760, 763, 765, 404 N.E.2d 1302, 1305, 1307 (1980), where a student suspended from college was not afforded a review hearing described in the college's published guidelines. In *Tedeschi*, the Court of Appeals expressly refused (1) to accept the proposition that the rules should be treated as contract, (2) to reverse dismissal of a claim for money damages, (3) to require more than "substantial compliance" with procedural rules, or (4) to direct immediate reinstatement pending the hearing. The relief granted was essentially a direction that a hearing must be held within five months, or else plaintiff must be reinstated. Since the plaintiffs in this case have neither formally demanded nor actively sought a review hearing, *Chalasani* and *Tedeschi* do little to further their cause.

Thus, under current New York law, the hospital's by-laws should not be treated as a contract in the manner urged by plaintiffs.

**6.** In their affidavit in support of preliminary injunctive relief and restraining order, plaintiffs rely specifically on art. III, sec. 5(5); art. III, sec. 7(4)(c); and art. III, sec. 8(3) of the by-laws.

**7.** The specific procedures outlined in art. III, sec. 8., concerning appeal to a hearing officer who hears evidence and makes findings for later review, if necessary, by the Board of Trustees, not surprisingly are suitable for cases where resolution of a factual question will be decisive. Where the basic facts are not disputed, and the critical questions concern the legal rights that arise under the facts (as one may expect where privileges are changed for reasons which reflect "institutional concerns," not characteristics of individual physicians), there would appear to be little sense in following such procedures, and thus little sense in reading them as an expansion of art. III, secs. 3,

### B. *Construction of the by-laws*

Even assuming that the hospital by-laws should be treated as a contract, injunctive relief would be unjustified, since plaintiffs' claim based on the by-laws seems unlikely to succeed.[6] Article III of the Nyack Hospital By-Laws is structured as follows:

| | |
|---|---|
| Section 1 | Qualifications |
| Section 2 | Ethics and Ethical Relationships |
| Section 3 | Application for Membership |
| Section 4 | Procedure of Appointment and Reappointment |
| Section 5 | Terms of Appointment |
| Section 6 | Discipline |
| Section 7 | Initiation of a Complaint |
| Section 8 | Appeal of Adverse Decision |
| Section 9 | Summary Suspension |
| Section 10 | Automatic Suspension |

. . . .

General provisions concerning membership appear in sections three through five of Article III. Sections six through ten are more limited in nature, referring to the situation where a physician is accused of incompetence or misconduct. To say that selected provisions of sections seven and eight apply even in cases which do not concern such accusations, then, seems to take them out of context.[7]

Once the provisions of sections seven and eight are excluded, the pertinent by-law provisions suggest only that plaintiffs are entitled not to be removed except by the Board of Trustees after conference with the Medical Executive Committee.[8] Plain-

4 and 5. *See generally* Nyack Hospital By-Laws, art. III, sec. 3(3B); N.Y.Pub.Health L. § 2801–b.

**8.** The general provisions in Article 3 include:
No practitioner shall be automatically entitled to membership on the Medical Staff or to exercise of particular clinical privileges ... because he had, or presently has ... staff membership or privileges at this hospital.... [art. III, sec. 3(1c) ];
An application may be denied ... on the basis of inconsistency with the Hospital's written plan of development ... or ... insufficient current or expected patient load to support an additional staff member with the applicant's skills and training.... [art. III, sec. 3(3B) ];
The Board of Trustees may [a]ccept the recommendation of the Staff, or [r]efer the recommendation to the Joint Conference Committee for advice, or ... [r]eject the application following consultation with the Joint

tiffs argue that no such action has been taken by the Board. Were the court to find both that the by-laws constitute a contract and that the Board has not acted, it might conclude that the individual plaintiffs retain privileges which are not being honored. As discussed earlier, however, a claim that existing privileges are being improperly dishonored is precisely the kind of claim which by law must first be presented to the Public Health Council.[9]

### Conclusion

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P. For the foregoing reasons, the court denied plaintiffs' application.

So Ordered.

Conference or Medical Executive Committee,.... [art. III, sec. 4(9) ];
In no case shall the Board of Trustees ... cancel an appointment previously made, or reduce or increase privileges, without conference with the Medical Executive Committee.... [art. III, sec. 5(3) ];
Members of the Staff are subject to removal by the Board of Directors at any time after a conference with the Medical Executive Committee .... [art. III, sec. 5(6)].

9. Defendants argue that the action of the Board of Trustees in approving the exclusive contract with NMA is sufficient to terminate plaintiffs' privileges as of May 1, 1985. In view of the analysis above, the court will not consider defendants' argument at this time.