Fletcher J. JOHNSON, M.D. and Benjay Realty Corp., Plaintiffs,

v.

NYACK HOSPITAL, Kenneth Steinglass, M.D., Daniel Berson, M.D., James Dawson and Rockland Thoracic Associates, P.C., Defendants.

No. 90 Civ. 0856 (RWS).

United States District Court, S.D. New York.

Sept. 10, 1991.

---

Reed Smith Shaw & McClay, Washington, D.C. (George R. Clark, Kevin D. Jones, of counsel), Reed Smith Shawe & McClay, Pittsburgh, Pa. (Debra H. Dermody, of counsel), Stein, Zauderer, Ellenhorn, Frischer & Sharp, New York City (Sidney H. Stein, of counsel), for plaintiffs.

Garfunkel, Wild & Travis, P.C., Great Neck, N.Y. (Norton L. Travis, Leonard M. Rosenberg, David A. Zarett, Susan F. Scharf, of counsel), for defendants Nyack Hosp., Daniel Berson, M.D. and James Dawson.

Proskauer Rose Goetz & Mendelsohn, New York City (Jeffrey A. Mishkin, Francis D. Landrey, Lauren S. Albert, of counsel), for defendants Kenneth Steinglass, M.D. and Rockland Thoracic Associates, P.C.

## OPINION

SWEET, District Judge.

Defendants Nyack Hospital ("Nyack"), Daniel Berson, M.D. ("Berson"), James Dawson ("Dawson"), Kenneth Steinglass, M.D. ("Steinglass"), and Rockland Thoracic Associates, P.C. ("Rockland") have moved pursuant to Rule 56, Fed.R.Civ.P. for summary judgment dismissing the complaint of plaintiffs Fletcher J. Johnson, M.D. ("Johnson"), and Benjay Realty Corporation ("Benjay"), as well as for attorneys' fees and costs. For the reasons set forth below, the summary judgment motions are granted. The motions for attorneys' fees are denied, but the motions for costs are granted.

*The Parties*

Johnson, a New York resident, is a physician licensed to practice in the states of New York and New Jersey. In 1972, Johnson was granted privileges to perform vascular and thoracic surgery at Nyack, a voluntary not-for profit hospital located in Nyack, Rockland County, New York.

Benjay is a New York corporation with its principal place of business in Upper Nyack, New York. At all relevant times, Benjay was owned and controlled by Johnson.

Steinglass, a New York resident, is chief of thoracic and vascular surgery at Nyack. Berson was the director of the Department of Surgery during the period relevant to

the complaint. Dawson served as Nyack's administrator during the relevant period.

Rockland is a New York professional corporation owned by Steinglass and Alfred Moscarella, M.D.

*Prior Proceedings*

On February 8, 1990, Johnson and Benjay filed their complaint alleging violations of the federal antitrust laws and tortious interference with economic advantage. The complaint alleged that Steinglass and Dawson conspired to revoke Johnson's privileges to perform thoracic and vascular surgery at Nyack in order to eliminate Johnson as a competitor in the market for thoracic and vascular surgery services.

The complaint alleged Johnson competed in the relevant market with other doctors at Nyack and had privileges to perform this type of surgery at other hospitals in Rockland County as well as plans to establish a "medical mall" in the area. According to the complaint, Johnson in 1984 announced plans for the "medical mall"—a treatment center that was to provide in a single location services from various specialists.

On August 30, 1990, Steinglass and Rockland filed their summary judgment motions. On October 18, 1990, Nyack, Berson and Dawson filed their summary judgment motions. A series of adjournments agreed to by the parties postponed the return date of the motion until May 30, 1991, as of which date the motion was considered fully submitted.

*The Facts*

*The Steinglass Review*

On January 1, 1985, Steinglass began his first three year term of service as chief of the Section of Thoracic and Vascular Surgery at Nyack (the "Section").

Under Nyack's by-laws (the "By–Laws"), a section chief is "accountable for all professional ... activities within his department." By–Laws Art. V, § 3(1). Shortly after being named section chief, Steinglass met with Berson and Dawson to discuss quality of care in the Section and agreed to conduct a review of all cases performed by Section members. The review consisted of an examination of all 222 cases performed by the nine Section members over the period from December, 1984 through June 1985. The review analyzed each surgeon's technique, judgment and documentation skills.

Steinglass concluded from the review that Johnson's performance fell below minimally acceptable standards. Steinglass recommended to Berson the revocation of Johnson's medical staff privileges to perform thoracic and vascular surgery.

*The Experts' Review*

Before taking any further action, Nyack retained two independent experts in thoracic and vascular surgery—Dr. E.F. Conklin ("Conklin") and Dr. Graham W. Knox ("Knox")—to review Johnson's thoracic and vascular cases. The experts, in separate and independent reports, also found that Johnson provided substandard care.

*Nyack's Revocation Decision*

On January 28, 1987, Berson informed Nyack's Credentials Committee that the Department of Surgery recommended that Johnson's thoracic and vascular surgery privileges not be renewed.

On February 10, 1987, Nyack's Credentials Committee held a special meeting to consider Berson's recommendation. At this meeting, Steinglass presented the conclusion reached in his report. The Steinglass, Knox, and Conklin reports were made available for the Credentials Committee members' review. The Credentials Committee recommended the revocation of Johnson's thoracic and vascular surgery privileges, based on the Surgery Department's recommendations, the reports of Steinglass and the two experts, and its own review.

In accordance with procedures required under the By–Laws, Nyack's Medical Executive Committee met on February 10, 1987 to consider the matter. Under the By–Laws, the Medical Executive Committee consists of the directors of each department; the President, past President, and Secretary–Treasurer of the medical staff; and three active members of the medical staff elected by the medical staff. Twenty-

four members of the Nyack medical staff attended this meeting as members of the Medical Executive Committee. Of that group—which represented the full range of specialties at Nyack—all but two voted in favor of rescinding Johnson's thoracic and vascular surgery privileges.

According to the minutes of the meeting, Steinglass again presented his report, the chairman of the Credentials Committee sent a letter setting forth its decision, and Berson summarized the expert opinions from Conklin and Knox. The Medical Ethics Committee members also received copies of the expert reports.

The minutes further report that:

Upon motion, after lengthy discussion, the recommendations that Dr. Fletcher Johnson's privileges in thoracic/vascular surgery be rescinded be approved. There was 1 opposed and 1 abstention. This will become effective immediately. A letter will be sent to Dr. Johnson informing him of this and advising him of what options are now available to him.

By letter of February 10, 1987, the chairman of the Medical Ethics Committee informed Johnson of the Medical Executive Committee's action. In that letter, he stated that the revocation of Johnson's privileges to practice thoracic and vascular surgery at Nyack would take effect the next day. The letter further stated that the Medical Executive Committee's action had been referred to the Peer Review and Ethics Committee for an investigation to commence within ten days and that Johnson would be contacted about receiving, pursuant to the By–Laws, a formal interview in front of that committee.

On February 24, 1987, Nyack's Peer Review and Ethics Committee reviewed and voted to uphold the Medical Ethics Committee's decision to revoke Johnson's privileges. Johnson was present at the February 24 meeting.

At the meeting, Steinglass made an oral presentation of his findings and of the reports of Knox and Conklin. Johnson raised claims of bias and incomplete records with regard to the previous proceedings. The

decision to revoke Johnson's privileges was effective immediately.

*The State Court Action*

Johnson subsequently commenced an action in New York State Supreme Court for Rockland County seeking a preliminary and permanent injunction reinstating his thoracic and vascular surgery privileges.

The Supreme Court dismissed Johnson's complaint for failure to exhaust administrative remedies, *i.e.*, the intra-hospital due process hearing—to which he was entitled under the By–Laws—and the statutorily required proceeding before the New York State Public Health Counsel, an agency specifically charged with ruling on physicians' staff privilege grievances.

*The Independent Officer Hearing*

Pursuant to the By–Laws, Johnson requested a review of the Peer Review and Ethics Committee's decision before an independent hearing officer. Under Article III § 8(2) of the By–Laws, Nyack appointed Dr. Julius Jacobson ("Jacobson"), a practicing surgeon at Mt. Sinai Hospital and a professor of surgery at Mt. Sinai Medical School as the independent hearing officer.

When informed of Nyack's selection of Jacobson, Johnson's counsel objected on the grounds that Jacobson had some prior familiarity with the case. Nyack responded that the appointment of a hearing officer is "within the province of the Hospital."

The hearing was held on December 17, 1987, from 8:00 a.m. until 3:30 p.m. Before the hearing, Nyack supplied Johnson and his counsel with copies of Steinglass' report, copies of the reports by Conklin and Knox, as well as medical records relating to the thoracic and vascular surgery cases to be reviewed at the hearing.

Under the procedures set forth in the By–Laws, Johnson was represented by counsel at the hearing. Pursuant to his rights under the By–Laws, he presented expert testimony on his behalf and he was given the opportunity to cross examine Nyack's witnesses.

Testimony proceeded on a case-by-case basis: Steinglass presented each case. After Steinglass' presentation, either Conklin

or Knox would present its opinion as Nyack's expert. Then Johnson and his expert witness were given the opportunity to present their testimony. Johnson testified concerning each case, and presented expert testimony from both a thoracic surgeon and a vascular surgeon on many of these cases.

Article III, Section 8(2) of the By–Laws provides that:

> The hearing shall proceed with the Medical Executive Committee's position, then the practitioner's position followed by any rebuttal on the part of the Medical Executive Committee and any rebuttal on the part of the practitioner.

Jacobson asked for and received from Nyack records pertaining to Johnson's 20 most recent abdominal aortic aneurysm cases.

By letter of January 22, 1988, Jacobson reported his conclusion to Nyack:

> ... My opinion is that [Johnson]'s privileges to practice Vascular Surgery and Thoracic Surgery should be revoked.

### Post Hearing Proceedings

Under the By–Laws, any appeal from a determination of a hearing officer appointed pursuant to Article III, Section 8, is to be made to Nyack's Joint Conference Committee. Johnson took such an appeal and, in accordance with the By–Laws, both Nyack and Johnson submitted written memoranda setting forth their positions. In his memorandum to the Joint Conference Committee, Johnson asserted that Jacobson was not impartial, based on Johnson's contacts with Jacobson before the hearing, in which he asked Jacobson to review his case to determine whether Jacobson could supply expert testimony on Johnson's behalf.

Jacobson submitted an affidavit in which he stated that Johnson had indeed asked him to review some of his cases many months before the hearing and that Jacobson had no recollection of this when Nyack asked him to serve as Hearing Officer.

Nyack decided to offer Johnson another hearing. After several attempts to designate a new hearing officer, Johnson, in a letter through counsel of June 16, 1989, told Nyack that in light of the "utter futility of the process" Johnson refused to go forward with a new hearing.

In a letter of July 6, Nyack responded that it would still be willing to schedule a hearing, but would wait for a response from Johnson before doing so.

Johnson did not pursue this right to a review by Nyack's Joint Conference Committee, nor has he sought relief from the New York State Public Health Council (the "PHC").

### Discussion

#### I. Summary Judgment Standard

Under Rule 56, a motion for summary judgment shall be granted when the moving party demonstrates as a matter of law that he is entitled to that remedy because there are no genuine issues of material fact present in the action. *H.L. Hayden Co. v. Siemens Medical Systems, Inc.*, 879 F.2d 1005, 1011 (2d Cir.1989). The moving party, however, has the burden of demonstrating the absence of any genuine issue as to all the material facts, and the non-moving party is entitled to all favorable inferences that may be drawn from the evidence. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 444–45 (2d Cir.1980).

#### II. The Antitrust Claims

##### A. *Exhaustion of Administrative Remedies*

Section 2801–b of the New York Public Health Law (McKinney's 1991) ("§ 2801–b") provides, in pertinent part, that:

> (1) It shall be an improper practice for the governing body of a hospital to ... terminate or diminish in any way a physician's ... professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character of competency of the applicant.
>
> (2) Any person claiming to be aggrieved by an improper practice ... may, by him-

self or his attorney, make, sign and file with the public health council a verified complaint . . .

The New York Court of Appeals has held that § 2801–b requires doctors aggrieved by a hospital's denial of privileges to present their claims to the PHC before pursuing a judicial remedy. *Guibor v. Manhattan Eye, Ear & Throat Hospital, Inc.*, 46 N.Y.2d 736, 413 N.Y.S.2d 638, 386 N.E.2d 247 (1978); *accord Cohoes Memorial Hospital v. Dep't of Health*, 48 N.Y.2d 583, 424 N.Y.S.2d 110, 399 N.E.2d 1132 (1979).

Federal Courts, moreover, have applied the exhaustion rule as set forth in *Guibor* to dismiss federal antitrust actions. *Rockland Physician Assocs., P.C. v. Grodin*, 616 F.Supp. 958 (S.D.N.Y.1985). In *Rockland*, plaintiff, an anesthesiologist, commenced an antitrust action after the hospital granted to a separate group of anesthesiologists the exclusive right to practice anesthesiology. The plaintiff neither invoked the hospital's internal hearing procedures nor the PHC's administrative remedies before commencing the antitrust action. In granting the defendants' motion to dismiss, the court held that plaintiff should exhaust any administrative remedies under the Public Health Law before commencing an action. *Id.* at 960.

Moreover, the instant case is perhaps an even more appropriate case than *Rockland* in which to require exhaustion of administrative remedies in as much as the antitrust claims in the instant case arise not out of an alleged exclusive dealing contract, but rather from a competency determination, which type of determination the PHC makes on a daily basis. *See Litman v. A. Barton Hepburn Hospital*, 1982–83 Trade Cas. (CCH) ¶ 65,161, 1983 WL 1780 (N.D.N.Y.1983) (dismissing antitrust claim arising out of denial of privileges for failure to exhaust administrative remedies).

Johnson cites *Giannelli v. St. Vincent's Hospital and Medical Center*, 160 A.D.2d 227, 553 N.Y.S.2d 677 (1st Dep't 1990) for the proposition that application of an exhaustion requirement to the instant case is inappropriate where, as here, the claim for relief arises outside of § 2801–b. In *Giannelli*, however, the plaintiff's claims were for breach of contract and for defamation, which the court held exist under common law aside from the procedure set forth in § 2801–b. *Id.*

Johnson also cites one federal case, *Furlong v. Long Island College Hospital*, 1984–1 Trade Cas. (CCH) ¶ 65, 994 (E.D.N.Y.1984) for this same proposition. However, there the exclusion of a physician resulted from the operation of an exclusive contract, and not from medical peer review findings of incompetence. Moreover, the court in *Furlong* relied on the proposition that a state legislature cannot proscribe the federal question jurisdiction of the federal courts. Here, however, it is not argued that the PHC remedy entirely divests this court of jurisdiction to hear Johnson's antitrust claim, but rather that this court's jurisdiction of the antitrust claim requires prior exhaustion of administrative remedies.

Indeed, the Honorable David N. Edelstein considered this same question in a recent opinion. In *Purgess v. Sharrock*, No. 89 Civ. 8096, slip. op., 1990 WL 104024 (S.D.N.Y. July 18, 1990), the court dismissed plaintiff physician's antitrust claims, based upon defendants' termination of his medical staff privileges, for failure to exhaust his administrative remedies before the PHC, on the grounds that if a plaintiff can avoid the exhaustion requirement by including federal claims in his complaint, such plaintiff "could then render § 2801(b) meaningless . . ." *Id.* Likewise in the instant case, Johnson's termination forms the basis for his antitrust claims.

Finally, even assuming, as Johnson argues, that § 2801–b does not strictly require administrative exhaustion before bringing an antitrust claim in federal court, the PHC's investigation of Nyack's decision pursuant to § 2801–b(3) would serve judicial economy by considering the reasonableness of Nyack's decision in the first instance, *see Fried v. Straussman*, 41 N.Y.2d 376, 381, 393 N.Y.S.2d 334, 338, 361 N.E.2d 984, 988 (1977) (PHC charged with responsibility to determine whether there

existed objectively reasonable grounds for hospital's decision), possibly saving this court from making a similar determination under the Health Care Quality Improvement Act of 1986, 42 U.S.C. § 11101 *et seq.* (the "Act").[1]

As Johnson has not yet exhausted his administrative remedies before the PHC, and as Johnson is required as a matter of law to exhaust such remedies, the summary judgment motions dismissing the antitrust claims must be granted.

### III. Tortious Interference Claim

■ For the reasons stated above, Johnson's tortious interference claims also require administrative exhaustion. Moreover, in the absence of the antitrust claims, this court has no pendent jurisdiction to hear the state law claims. Accordingly, summary judgment dismissing the tortious interference claims must also be granted.

### IV. Motions for Attorneys' Fees and Costs

■ Nyack, Berson, Dawson, Steinglass, and Rockland have also moved for attorneys' fees and costs pursuant to the Act, 42 U.S.C. § 11113.

Section 11113 provides:

In any suit brought against a defendant, to the extent that a defendant has met the standards set forth under section 11112(a) of this title and the defendant substantially prevails, the court shall, at the conclusion of the action, award to a substantially prevailing party defending against any such claim the cost of the suit attributable to such claim, including a reasonable attorney's fee, if the claim, or the claimant's conduct during the litigation of the claim, was frivolous, unrea-

sonable, without foundation, or in bad faith.

In the instant case, Nyack, Berson, Dawson, Steinglass, and Rockland have substantially prevailed insofar as their summary judgment motions have been granted. The court has not found it necessary to determine for the purposes of the summary judgment motions whether Nyack, Berson, Dawson, Steinglass, and Rockland met the standards set forth in § 11112(a) of the Act. For the purposes of the attorneys' fees and costs motions, however, Nyack, Berson, Dawson, Steinglass and Rockland have made a showing of compliance with the reasonableness standards as set forth in the Act based on the undisputed facts relating to the review procedures accorded Johnson and on those undisputed facts from which it can be inferred that Nyack, Berson, Dawson, Steinglass and Rockland acted in the reasonable belief that they were furthering quality health care. However, the undisputed facts also show that the complaint was not frivolous or entirely without foundation. Therefore, the motions for attorney's fees is denied, but the motions for costs are granted.

### *Conclusion*

For the reasons set forth above, the summary judgment motions are granted and the complaint is dismissed. The motions for attorneys' fees are denied, but the motions for costs are granted. Settle judgment on notice.

It is so ordered.

---

1. The Act provides immunity from liability for damages under federal or state law for any professional review action taken:
   (1) in the reasonable belief that the action was in the furtherance of quality health care,
   (2) after a reasonable effort to obtain the facts of the matter,
   (3) after adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
   (4) in the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3). 42 U.S.C. § 11112(a). As the body charged with the regulation of hospitals in New York State, the PHC is presumably in a better position than is this court to make its similar determination of reasonableness pursuant to § 2801-b.