**Louis C. ROSE, M.D., Plaintiff,**

v.

**Rudolph F. TADDONIO, M.D., Edward Stolzenberg as Commissioner of Hospitals of Westchester County, Westchester County Medical Center, the New York Medical College, St. Agnes Hospital, William Tan, Ortho Range, Ltd., William J. Walsh, Jr., M.D., David Wellin, M.D., Stephen A. Weseley, M.D., and University Orthopaedics, P.C., Defendants.**

**No. 95 CV 1812 (BDP).**

United States District Court,
S.D. New York.

July 25, 1996.

Joseph Milano, Schwartz, Harmon, Levin and Milano L.L.P., New York City, for Plaintiff.

Richard E. Donovan, Kelly Drye & Warrn, New York City, for Defendants Taddonio, New York Medical College, St. Agnes Hospital, William Tan, William J. Walsh, Jr., M.D.,

David Wellin, M.D. Stephen A. Weseley, M.D. and University Orthopaedics, P.C.

Irma W. Cosgriff, Westchester County Law Department, White Plains, NY, for Defendants Westchester County and Edward Stolzenberg.

Hochfelder and Weininger, White Plains, NY, for Defendant Ortho Range Ltd.

## MEMORANDUM DECISION and ORDER

PARKER, District Judge.

### FACTS

This action for violations of the Sherman Act, 15 U.S.C. § 1 *et seq.*, civil rights, 42 U.S.C. § 1983, and state law is before this Court on defendants' motions to dismiss pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. Plaintiff Louis C. Rose, a New York resident, is a physician licensed to practice in the states of New York, New Jersey and Florida. Until 1994, Rose was a member of the medical staff of defendants Westchester County Medical Center and St. Agnes Hospital, and he was a faculty member at the defendant New York State Medical College. Defendant Rudolph F. Taddonio is also a physician and member of the medical staff at Westchester County. From 1989 through June 1994, when defendant William J. Walsh succeeded him, Taddonio was Acting Chairman and Program Director of the Department of Orthopaedic Surgery at Westchester County and the Medical College. Defendant Stephen Weseley is the Medical Director at St. Agnes. Defendant Edward Stolzenberg is the Commissioner of Hospitals of the County of Westchester. Defendant William Tan is the President/CEO of St. Agnes.

Rose alleges that, before Taddonio became Acting Chairman of the Department of Orthopaedic Surgery at Westchester County, a private practice plan existed at Westchester County whereby orthopaedic surgeons conducted their clinical practices at Westchester County or the Medical College. As Acting Chairman, Taddonio created a central billing office for the Department, through which he controlled the practice plan, and thereafter, increased the percentage of income assessed the physicians in the practice plan. The additional funds were allegedly to be used to construct an orthopaedic institute at Westchester County, which would be donated to the Medical College. Rose allegedly spoke out against the increase. He specifically objected to Taddonio's role in the project because he was not a significant participant in the practice plan.

Rose alleges that, in retaliation, Taddonio conspired with the other defendants to drive Rose out of practice, by, for example, suspending his "on call" privileges at Westchester County in May of 1994, terminating his privileges at St. Agnes in November of 1994, and terminating his employment with Lincoln Hospital beginning in February 1995, all without notice or a hearing.

In addition, Rose alleges that, in 1992, when he applied for a license to practice medicine in Florida, Taddonio made false statements about him in an evaluation; in September of 1994, after Walsh succeeded Taddonio as Acting Chairman of the Department, Walsh, Taddonio and Wellin met with members of the Department, falsely accused Rose of stealing money from the practice plan, and reported that the matter had been turned over to the Medical College's attorneys; and, in November 1994, when Westchester County and the Medical College established a health maintenance organization ("HMO"), Walsh invited all members of the Department, except Rose, to join.

The complaint charges defendants with the unreasonable restraint of trade, a group boycott, attempted monopolization and conspiracy to monopolize in violation of the Sherman Act, 15 U.S.C. §§ 1 & 2, constitutional violations of due process and equal protection under 42 U.S.C. § 1983, slander, fraud, breach of contract, defamation, unfair competition, tortious interference, intentional infliction of emotional distress, breach of fiduciary duty, and negligence. Defendants now move to dismiss the complaint on a variety of grounds. Defendants' motions to dismiss are granted on the ground that Rose has not first pursued his administrative remedies.

### DISCUSSION

Because the purpose of a motion to dismiss is merely to assess the legal feasibili-

ty of the complaint, not to assay the weight of the evidence which might be offered in support thereof, *see Geisler v. Petrocelli,* 616 F.2d 636, 639 (2d Cir.1980), a plaintiff need not come forward with proof of its allegations. A plaintiff must, however, allege facts that taken as true constitute a claim. "In considering Rule 12 motions to dismiss, the Court must accept the facts appearing on the face of the complaint as true, and consider them along with such reasonable inferences as may be drawn in complainant's favor." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

■ Under New York law, a hospital may terminate a physician's privileges only "for reasons limited to patient welfare, institutional objectives, and character or competency of the physician." *Fried v. Straussman,* 41 N.Y.2d 376, 393 N.Y.S.2d 334, 335, 361 N.E.2d 984, 985 (1977) (citing New York Public Health Law § 2801–b).[1] The statutory procedure by which a physician may challenge a termination of hospital privileges is a two-step process, the first of which is review of the physician's claim by the New York Public Health Council ("PHC"), pursuant to Public Health Law § 2801–b.[2] The PHC customarily hears cases, such as the instant case, where a physician complains that a hospital unfairly terminated his privileges. "A primary function of the PHC is to determine whether there is a medical justification for the withdrawal of the doctor's privileges." *Johnson,* 964 F.2d at 121.

Courts have held that a physician seeking to have his privileges restored must first file a complaint with the PHC before proceeding to the second step of seeking redress in the courts. *Johnson v. Nyack Hospital,* 964 F.2d 116, 121 (2d Cir.1992) (citing *Guibor v. Manhattan Eye, Ear and Throat Hosp., Inc.,* 46 N.Y.2d 736, 413 N.Y.S.2d 638, 386 N.E.2d 247 (1978)). In fact, "a court must dismiss any suit brought by a physician seeking reinstatement of his privileges if the physician has not exhausted his remedies before the PHC." *Johnson,* 964 F.2d at 121; *accord Gelbard v. Genesee Hospital,* 87 N.Y.2d 691, 642 N.Y.S.2d 178, 180, 664 N.E.2d 1240, 1242 (1996). "This requirement applies to all claims," *see Rockland Physician Assocs. v. Grodin,* 616 F.Supp. 958, 960 (S.D.N.Y.1985), including claims for injunctive relief to compel the restoration of staff privileges, *see Gelbard,* 642 N.Y.S.2d at 180, 664 N.E.2d at 1242, and claims for damages which turn on whether there was a legitimate medical reason for the termination, *see Johnson,* 964 F.2d at 121.[3] Courts have also applied this rule to dismiss claims for alleged due process and equal protection violations brought in conjunction with such claims. *See Purgess v. Sharrock,* 1990 WL 104024 (S.D.N.Y. *1) (dismissing antitrust, due process, equal protection and state law claims); *Shapiro v. Central General Hospital, Inc.,* 181 A.D.2d 896, 581 N.Y.S.2d 430, 430 (2d Dept.1992) (dismissing petition alleging matters within purview of Public Health Law § 2801–b in addition to alleged procedural violations); *Libby v. Long Island Jewish–Hillside Medical Center,* 163 A.D.2d 388, 558 N.Y.S.2d 116, 117 (2d Dept.1990) (dismissing petition be-

---

1. New York Public Health Law § 2801–b(1) provides:

   It shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges or to deny or withhold from a physician ... staff membership or professional privileges in a hospital, or to exclude or expel a physician ... from staff membership in a hospital or curtail, terminate or diminish in any way a physician's ... professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.

2. Public Health Law § 2801–b(2) provides:

   Any person claiming to be aggrieved by an improper practice as defined in this section

may, by himself or his attorney, make, sign and file with the public health council a verified complaint in writing which shall state the name and address of the hospital whose governing body is alleged to have committed the improper practice complained of and which shall set forth the particulars thereof and contain such other information as may be required by the council.

3. *Johnson* affirmed the district court's conclusion that Johnson was required to file his complaint with the PHC first, but disavowed its reliance on the doctrine of exhaustion. It held that the doctrine of primary jurisdiction, rather than exhaustion, was the applicable principle. *Johnson,* 964 F.2d at 122.

cause it was "not limited to allegations that the hospital has failed to comply with its by-laws but alleges matters properly falling within the scope of administrative review" by PHC); *Capote v. Our Lady of Mercy Medical Center,* 168 A.D.2d 238, 562 N.Y.S.2d 478 (1st · Dept.1990) (dismissing due process claims).

■ Here, whether defendants had a proper medical reason for suspending and terminating Rose's privileges will be dispositive of his antitrust claims. In addition, Rose seeks a permanent injunction "withdrawing any limitations on his privileges at Westchester County and St. Agnes," and reinstating his privileges.[4] Complaint ¶ 180 (p. 39), ¶ 7 (p. 45). Because Rose's complaint alleges claims within the purview of Public Health Law § 2801–b, but it does not allege that he has filed a complaint with the PHC, defendants' motions to dismiss the complaint are granted. *See Johnson,* 964 F.2d at 121; *Purgess,* 1990 WL 104024 at *1; *Rockland,* 616 F.Supp. at 960; *Gelbard,* 642 N.Y.S.2d at 180, .664 N.E.2d at 1242; *Shapiro,* 581 N.Y.S.2d at 430; *Libby,* 558 N.Y.S.2d at 117; *Capote,* 562 N.Y.S.2d at 479. The dismissal of the complaint is with leave to renew after PHC review. *See Gelbard,* 642 N.Y.S.2d at 181, 664 N.E.2d at 1243.

In conclusion, defendants' motions to dismiss the complaint without prejudice are granted. The Clerk of the Court is directed to close the case.

SO ORDERED.

---

**4.** In a letter, dated June 7, 1996, counsel for Rose states that St. Agnes granted Rose's application to renew his privileges there, and therefore, to the extent the complaint sought injunctive relief to compel the restoration of staff privileges at St. Agnes, those claims against St. Agnes are moot. Rose's damage claims against St. Agnes remain, however. Because a legitimate medical reason for the termination of his privileges would be a complete defense to the antitrust claims, Rose must first take his grievance to the PHC. *See Johnson,* 964 F.2d at 121.